SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**J.H. v. Warren Hills Board of Education** (A-77-24) (090726)

**Argued March 3, 2026 -- Decided August 4, 2026**

**JUSTICE HOFFMAN, writing for a unanimous Court.**

In this appeal, the Court considers whether the elimination of the "within the household" requirement from the Child Sexual Abuse Act (CSAA) through a provision of the Child Victims Act (CVA) applies retroactively to acts of sexual abuse that occurred prior to the amendment's effective date of December 1, 2019.

In November 2021, plaintiff J.H. filed a complaint alleging that, between 1976 and 1978, when he was twelve and thirteen years old, F.M. was employed as a custodian and wrestling coach at Warren Hills Junior High School. Plaintiff asserts that F.M. sexually abused him on school grounds and that the school permitted F.M. to transport him from the school to F.M.'s residence, where additional acts of sexual abuse occurred. In addition to several common law claims, plaintiff raised statutory claims, including under the CSAA.

Defendants Warren Hills Junior High School and the Warren Hills Board of Education moved for summary judgment on plaintiff's CSAA claim. The trial court held that the removal of the "within the household" requirement applied to all claims filed on or after December 1, 2019, irrespective of when the sexual abuse occurred, and denied the motion. The Appellate Division affirmed. 481 N.J. Super. 536, 540-41 (App. Div. 2025). The Court granted leave to appeal. 261 N.J. 156 (2025).

**HELD:** Pursuant to the plain language of the CVA and the Legislature's unequivocal statement that the amendment operates prospectively, the Court holds that the removal of the "within the household" requirement applies only to instances of sexual abuse committed on or after December 1, 2019.

1. In 1992, the Legislature enacted the CSAA, thereby establishing the first statutory cause of action for sexual abuse in New Jersey. The new law set forth the procedures to be followed in civil actions for injury based on child sexual abuse, which the CSAA defined as "an act of sexual contact or sexual penetration between a child under the age of 18 years and an adult." N.J.S.A. 2A:61B-1 (1992). In addition to persons who inflict the abuse, the statute addressed "passive abusers," or

1

those persons who know of the abuse and fail to protect the child.  Under the 1992 statute, "[a] parent . . . or other person standing in loco parentis within the household who knowingly permits or acquiesces in sexual abuse by any other person also commits sexual abuse."  Ibid.  Whether an entity was deemed "within the household" was a fact-sensitive determination, considering the particular qualities and characteristics of the relationship between the entity and the individual alleging abuse.  (pp. 3 n.1; 12-13)

2.  In 2019, the Legislature overhauled the CSAA and other existing legislation through a series of amendments collectively referred to as the Child Victims Act. The Court reviews the amendments.  As to the CSAA's definition of sexual abuse, the CVA removed the requirement that passive abusers be "within the household" of the victim.  The second sentence of the definition, which addresses passive abusers, now reads:  "A parent, resource family parent, guardian or other person standing in loco parentis who knowingly permits or acquiesces in sexual abuse by any other person also commits sexual abuse."  N.J.S.A. 2A:61B-1(a)(1).  The removal of the "within the household" requirement permits "any individual person, or private or public entity, who takes custody and control of children even on a limited, temporary basis to potentially be liable as a passive abuser."  S. Judiciary Comm. Statement to S. Comm. Sub. for S. 477 5 (Mar. 7, 2019).  The Legislature specified that this amendment "[was] intended to only apply prospectively."  Id. at 6. (pp. 13-15)

3.  With regard to whether legislative enactments should apply prospectively or retroactively, courts have established a distinction between substance and procedure. Procedural statutes regulate the litigation process and are generally applied to all actions and proceedings -- those which have accrued or are pending, as well as those yet to be brought.  Because substantive statutes, in contrast, impact vested rights, courts generally look to the event giving rise to the claim and construe such statutes prospectively.  To determine whether a substantive statute should instead be applied retroactively, New Jersey courts employ a two-part test.  First, a court considers whether the Legislature intended to give the statute retroactive application.  There are three situations that support a finding that the Legislature intended for a statute to apply retroactively:  (1) when the Legislature explicitly or implicitly expresses an intent that a law be retroactive; (2) when an amendment is ameliorative or curative; or (3) when the parties' expectations warrant retroactive application.  The second part of the test considers the results of retroactive application.  (pp. 15-17)

4.  The Court explains that the removal of the "within the household" requirement from the CSAA is a substantive change, not a procedural one.  The "within the household" amendment does not simply remove a procedural obstacle; rather, it imposes new legal burdens and expands substantive liability.  It alters "substantive rights" by creating new liability where none previously existed.  (pp. 18-20)

2

5.  Turning to whether the Legislature intended to give the statute retroactive application, the Court first considers any explicit or implicit expression of such intent.  The plain language of the statute of N.J.S.A. 2A:14-2c provides that the amendments of the CVA "shall take effect on December 1, 2019."  This phrase has consistently been interpreted to provide for prospective and not retroactive application of a statutory provision.  Other sections of the CVA, unlike the amendment at issue here, expressly call for retroactive application through reference to circumstances "that occurred prior to" the CVA's effective date.  That distinction further evinces the Legislature's intent that the elimination of the "within the household" requirement operates only prospectively:  when the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded.  The Court finds further support for the conclusion that the amendment was intended to apply prospectively in the Senate Judiciary Committee's Statement and in the reasoning of the United States District Court for the District of New Jersey in Doe ex rel. Doe v. Small, 654 F.Supp.3d 376, 383-84 (D.N.J. 2023), which reached the same conclusion the Court reaches here.  (pp. 21-26)

6.  Turning to the nature of the legislative enactment, the Court explains that the Legislature may signal its intent for a statute to apply retroactively when it is "ameliorative" or "curative" in nature.  Plaintiff does not raise this argument or address this part of the test, and the Court finds that the amendment alters the substantive scope of the CSAA, rather than cures a "perceived imperfection" or "misapplication" of the statute.  Turning to the last consideration for determining the retroactivity of statutes -- the parties' expectations -- the Court notes that the expectation of retroactive application should be strongly apparent to the parties in order to override the lack of any explicit or implicit expression of intent for retroactive application.  Stressing the well-established presumption that statutory amendments apply prospectively, the Court explains why the general statements found in the CVA's legislative history on which plaintiff relies do not satisfy that standard.  Having found no support for a legislative intent that the amendment removing "within the household" from the CSAA's definition of sexual abuse apply retroactively, the Court does not reach the second part of the retroactivity test. (pp. 26-29)

     **REVERSED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE HOFFMAN's opinion.**

3

SUPREME COURT OF NEW JERSEY
A-77 September Term 2024
090726

J.H.,

Plaintiff-Respondent,

v.

Warren Hills Board of
Education and Warren
Hills Junior High School,

Defendants-Appellants,

and

The Estate of F.M.,

Defendant.

On appeal from the Superior Court,
Appellate Division, whose opinion is reported at
481 N.J. Super. 536 (App. Div. 2025).

| Argued | Decided |
|--------|---------|
| March 3, 2026 | August 4, 2026 |

Cherylee O. Melcher argued the cause for appellants (Hill
Wallack, attorneys; Cherylee O. Melcher, on the briefs).

Jeffrey M. Russo argued the cause for respondent (Russo
Law Offices, attorneys; Jeffrey M. Russo, on the briefs).

Marie Cepeda Mekosh, Deputy Attorney General, argued
the cause for amicus curiae Attorney General of New

Jersey (Jennifer Davenport, Attorney General, attorney; Jeremy M. Feigenbaum, Solicitor General, Benjamin M. Shultz, Assistant Attorney General, and Marie Cepeda Mekosh, on the brief).

Eric G. Kahn argued the cause for amicus curiae New Jersey Association for Justice (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, attorneys; Eric G. Kahn and Annabelle M. Steinhacker, of counsel and on the brief).

Craig J. Hubert argued the cause for amicus curiae New Jersey State Bar Association (New Jersey State Bar Association, attorneys; Christine A. Amalfe, of counsel, and Craig J. Hubert and Thomas J. Manzo, on the brief).

William F. Cook submitted a brief on behalf of amicus curiae New Jersey Municipal Excess Liability Fund (Brown & Connery, attorneys; William F. Cook and Ryan J. Kelly, on the brief).

Peter J. Pizzi submitted a brief on behalf of amicus curiae New Jersey Defense Association (Walsh Pizzi O'Reilly Falanga, attorneys; Peter J. Pizzi, Eric S. Padilla, and Carmen I. Abrazado, on the brief).

Robert E. Levy submitted a brief on behalf of amici curiae the Northfield Board of Education, Northfield School District, Northfield Community School, Lincoln Park Board of Education, Lincoln Park School District, and Lincoln Park Elementary School (Scarinci Hollenbeck, attorneys; Robert E. Levy, of counsel and on the brief, and Seraphema Menna, on the brief).

Adam S. Weiss submitted a brief on behalf of amici curiae School Alliance Insurance Fund, DIPLOMA Joint Insurance Fund, and School Excess Liability Joint Insurance Fund (The Busch Law Group, attorneys; Adam S. Weiss, of counsel and on the brief, and David B. Rubin and Caitlin W. Lundquist, on the brief).

JUSTICE HOFFMAN delivered the opinion of the Court.

In 2019, the Legislature enacted the Child Victims Act (CVA), which implemented "landmark amendments to the Child Sexual Abuse Act (CSAA), Charitable Immunity Act (CIA), and Tort Claims Act (TCA)" by extending the statute of limitations and creating a two-year filing window for previously time-barred actions. See W.S. v. Hildreth, 252 N.J. 506, 510-11 (2023); see also N.J.S.A. 2A:14-2a(a)(1), -2b. One amendment to the CSAA, which is at issue here, "expand[ed] the categories of potential defendants" by removing the requirement that a passive abuser be "within the household" of the victim; this amendment now makes non-resident individuals and entities potentially liable for child sexual abuse.[1] S. Judiciary Comm. Statement to S. Comm. Sub. for S. 477 1 (Mar. 7, 2019).

In this case, we consider whether the amendment eliminating the "within the household" requirement applies retroactively to acts of sexual abuse that

---

[1] "The CSAA . . . establishes two classes of abusers:" (1) "active abusers" are "those persons who inflict the abuse"; and (2) "passive abusers" are "those persons who . . . know of the abuse and who fail to protect the child." Hardwicke v. Am. Boychoir Sch., 188 N.J. 69, 86 (2006). Prior to being amended in 2019, the CSAA required that a passive abuser be "(1) a person (2) standing in loco parentis (3) within the household." Ibid. "In loco parentis" is defined as "relating to, or acting as a temporary guardian or caregiver of a child, taking on all or some of the responsibilities of a parent." Id. at 91 (quoting Black's Law Dictionary 803 (8th ed. 2004)).

3

occurred prior to the amendment's effective date of December 1, 2019. Pursuant to the plain language of the CVA and the Legislature's unequivocal statement that the amendment operates prospectively, we reverse the judgment of the Appellate Division and hold that the removal of the "within the household" requirement applies only to instances of sexual abuse committed on or after December 1, 2019.

I.

A.

This matter arises from allegations of sexual abuse occurring between 1976 and 1978, when plaintiff, J.H., was twelve and thirteen years old and F.M. was employed as a custodian and wrestling coach at Warren Hills Junior High School. Plaintiff asserts that F.M. sexually abused him on school grounds, including in the custodian supply room, bathrooms, and the basement boiler room. Plaintiff further alleges that the school permitted F.M. to transport him from the school to F.M.'s residence, where additional acts of sexual abuse occurred. Plaintiff contends that, as a result of the abuse, he suffered mental and physical harm, including anxiety, severe emotional distress, extreme trauma, depression, post-traumatic stress disorder, and addiction.

4

B.

On November 29, 2021, plaintiff filed a complaint against Warren Hills Junior High School, the Warren Hills Board of Education, and the estate of F.M., who passed away in 1995. Plaintiff raised: (1) common law claims of negligence, gross negligence, intentional infliction of emotional distress, breach of fiduciary duty, negligent supervision, and negligent hiring and retention; (2) claims under the Law Against Discrimination (LAD); and (3) claims under the CSAA.

Warren Hills Junior High School and the Warren Hills Board of Education (collectively, defendants) moved for summary judgment on plaintiff's CSAA claim.[2] In support of their motion, defendants argued that "the unmistakable legislative intent expressed in the Senate Judiciary Committee Statement" clearly establishes that the elimination of the "within the household" requirement for passive abuser liability under the CSAA is to be applied prospectively to acts of sexual abuse occurring on or after the

---

[2] Defendants also moved for summary judgment on plaintiff's LAD and common law claims, specifically arguing that the common law claims were barred for failure to comply with the TCA's notice requirement. The trial court denied defendants' motion as to both claims. Defendants later withdrew their request for summary judgment on the LAD claim and moved for leave to appeal the denial of summary judgment on the common law claims, raising the issue of whether plaintiff's common law claims are subject to the TCA's notice requirement.

amendment's December 1, 2019 effective date. Thus, defendants contended they could not be held liable as passive abusers because they were not "within" plaintiff's "household" at the time of the abuse.

In its statement of reasons, the trial court granted defendants' motion, finding that plaintiff's CSAA claim was "not cognizable against the school board" because public day schools do not fall "within the definition of 'household.'" However, in the corresponding order, the court, inconsistent with the statement of reasons, denied defendants' motion for summary judgment as to this claim.

Defendants moved for reconsideration and modification of the trial court's findings on plaintiff's CSAA claim. The trial court clarified that its intent was for its order, not the accompanying statement of reasons, to control. It affirmed the denial of defendants' motion for summary judgment on plaintiff's CSAA claim. The trial court relied on W.S., which held that the elimination of the TCA's notice requirement to actions for injuries resulting from sexual abuse applies to all CSAA claims filed on or after the statute's effective date. The trial court similarly construed the removal of the "within the household" requirement to apply to all claims filed on or after December 1, 2019, irrespective of when the sexual abuse occurred.

The Appellate Division granted defendants' motion for leave to appeal and affirmed the trial court's orders denying defendants' motions for summary judgment and reconsideration. J.H. v. Warren Hills Bd. of Educ., 481 N.J. Super. 536, 540-41 (App. Div. 2025). The appellate court found that restricting application of the "within the household" amendment to sexual abuse occurring on or after its effective date would contradict the CSAA's plain language and purpose to provide for liability for non-resident entities as "passive abusers." Id. at 547-48. The Appellate Division acknowledged that "changes to the law that are procedural rather than substantive" are treated differently, citing Maia v. IEW Construction Group, 257 N.J. 330, 348 (2024), but relied on W.S. to conclude that the removal of the "within the household" requirement is akin to removing the TCA's notice requirement for CSAA actions and applies to all complaints filed on or after the amendment's effective date.[3] Id. at 550.

This Court granted defendants' motion for leave to appeal. 261 N.J. 156 (2025). We also granted motions by the Attorney General; New Jersey

---

[3] The Appellate Division further held, consistent with the rationale this Court applied in W.S., that the 2019 amendment to the TCA -- removing its procedural requirements from actions for injuries resulting from sexual abuse -- applies to common law claims. J.H., 481 N.J. Super. at 547. Defendants did not appeal that aspect of the Appellate Division's judgment, and plaintiff's common law claims remain.

7

Municipal Excess Liability Joint Insurance Fund; New Jersey Defense Association; Northfield Board of Education and School District and Lincoln Park Board of Education and School District (School Districts); School Alliance Insurance Fund, Diploma Joint Insurance Fund, and School Excess Liability Joint Insurance Fund (Joint Insurance Funds) to appear as amici curiae. The New Jersey State Bar Association (NJSBA) and the New Jersey Association for Justice (NJAJ), who participated as amici curiae before the Appellate Division, continue to participate.

## II.

### A.

Defendants contend that the Appellate Division erred in applying the "within the household" amendment to plaintiff's claim of sexual abuse, which occurred prior to the amendment's effective date. They argue that such retroactive application of a change in substantive law is unsupported by the plain language and legislative history of the CVA and is inconsistent with this Court's precedent. The Attorney General echoes these arguments, emphasizing that a substantive amendment is one that alters a party's liability for tortious conduct. Thus, because the "within the household" amendment rendered passive abuse occurring outside the household actionable for the first

8

time under the CSAA, the Attorney General asserts that it must be applied prospectively.

The New Jersey Municipal Excess Liability Joint Insurance Fund, in urging this Court to adopt defendants' position, highlights the insurance and risk management consequences of applying the amendment retroactively to public entities, who never contemplated or insured themselves against this unforeseen liability. Similarly, the New Jersey Defense Association cautions that the retroactive application of the "within the household" amendment could unjustly expose numerous entities to new liability and disrupt the resolution of many pending cases by drastically reducing the likelihood of settlement.

The School Districts assert that applying the "within the household" amendment retroactively to allegations of abuse occurring prior to December 1, 2019, "would be an expansion of liability against public entities which the [L]egislature did not contemplate, and surely did not intend for." Such application, they argue, would "place public entities at risk for limitless litigation for matters which are decades old." The Joint Insurance Funds add that this would "irreparably harm hundreds of school districts," compelling them to "exhaust immeasurable financial resources" on CSAA lawsuits. This unanticipated increase in litigation expenditures, the Joint Insurance Funds

9

submit, will have a "negative effect on school district budgets," requiring schools to divert funds from student programming and educational services.

## B.

Plaintiff maintains that the Appellate Division correctly applied the "within the household" amendment to all claims filed on or after December 1, 2019, regardless of when the sexual abuse occurred. Plaintiff contends that such application aligns with this Court's reasoning in W.S. and is necessary to effectuate the Legislature's intent in enacting the CVA as expressed in its legislative history: namely, "to vastly expand the opportunities of child sexual abuse victims to seek long overdue justice." Plaintiff asserts that a cause of action under the CSAA provides for "significant . . . damages not otherwise available to victims under common law" and argues that common law claims are insufficient to remedy the societal harm caused by child sexual abuse.

The NJSBA urges adoption of plaintiff's interpretation that the "within the household" amendment applies to all actions timely filed under the CSAA, irrespective of when the sexual abuse occurred. The NJSBA submits that applying the amendment only to sexual abuse arising on or after its effective date would undermine the Legislature's remedial intent to "keep[] the courthouse doors open for all sexual assault victims."

10

The NJAJ argues that the Legislature's intent in enacting the "within the household" amendment -- that "all victims of sexual abuse should be given broad access to our courts" -- is "obvious" such that the amendment must apply to all claims filed on or after December 1, 2019. The NJAJ also asserts that defendants' proposed application, limiting the "within the household" amendment to conduct occurring on or after its effective date, "disenfranchises a small subset of sexual abuse victims from judicial review."

### III.

### A.

We review a trial court's decision on a motion for summary judgment de novo. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Whether the trial court and Appellate Division properly denied defendants' motion for summary judgment in this case turns on the application of the "within the household" amendment, "'a purely legal question of statutory interpretation' that also requires de novo review." Maia, 257 N.J. at 342 (quoting Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016)); see also Affrunti v. Reed Smith LLP, 483 N.J. Super. 133, 143 (App. Div. 2025) ("Our review of whether the [legislation at issue] applies retroactively or prospectively is de novo because it involves an issue of statutory interpretation.").

11

In interpreting a statute, our objective is to effectuate the Legislature's intent by "constru[ing] and apply[ing] the statute as enacted." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (quoting In re Closing of Jamesburg High Sch., 83 N.J. 540, 548 (1980)). "[G]enerally, the best indicator of [legislative] intent is the statutory language." Ibid. Therefore, we look first to the statute's plain language, giving the enacted "words their ordinary meaning and significance and read[ing] them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (citation omitted).

B.

Here, the legislative language we interpret is a 2019 amendment to the CSAA.

"Prior to 1992, victims of sexual abuse were limited to common-law theories of assault, battery, and intentional infliction of emotional distress." Hardwicke, 188 N.J. at 85. Such actions were constrained by N.J.S.A. 2A:14-2, which provided that "an action at law" for these injuries must be "commenced within two years."

In 1992, the Legislature enacted the CSAA, L. 1992, c. 109, § 1 (codified at N.J.S.A. 2A:61B-1), thereby "establish[ing] the first statutory cause of action for sexual abuse in New Jersey." Hardwicke, 188 N.J. at 84.

12

The new law set forth the procedures to be followed in civil actions for injury based on child sexual abuse, which the CSAA defined as

> an act of sexual contact or sexual penetration between a child under the age of 18 years and an adult. A parent, foster parent, guardian or other person standing in loco parentis <u>within the household</u> who knowingly permits or acquiesces in sexual abuse by any other person also commits sexual abuse.
>
> [N.J.S.A. 2A:61B-1 (1992) (emphasis added).]

Whether an entity was deemed "within the household" was a fact-sensitive determination, considering the particular qualities and characteristics of the relationship between the entity and the individual alleging abuse. <u>Compare</u> <u>Hardwicke</u>, 188 N.J. at 94 (concluding that a private residential school providing "amenities characteristic of both a school and a home" was "within the household" for purposes of its students), <u>with</u> <u>J.P. v. Smith</u>, 444 N.J. Super. 507, 524 (App. Div. 2016) (finding that the term "within the household" "connotes a degree of 'residential' custody" not present in the students' relationship with their public school).

In 2019, the Legislature "overhauled" the CSAA, CIA, and TCA by enacting a series of amendments collectively referred to as the Child Victims Act, effective December 1, 2019. <u>See</u> <u>W.S.</u>, 252 N.J. at 511; <u>see also</u> N.J.S.A. 2A:14-2c. The Senate Judiciary Committee's Statement to Senate Bill 477 (Committee Statement), the bill enacting the CVA, set forth the purpose,

13

scope, and rationale underlying the legislation. The Committee Statement also provided a comprehensive section-by-section analysis, describing the intended effect of each provision of the bill.

Section 2 of the bill, codified at N.J.S.A. 2A:14-2a, expanded the statute of limitations for claims of child sexual abuse by permitting survivors "to file a claim any time before reaching the age of fifty-five, or seven years after discovering the harm, whichever is later." W.S., 252 N.J. at 511. The Legislature explicitly provided for the retroactive application of the extended statute of limitations, thereby "reviving claims that would have been barred under the prior two-year statute of limitations" prescribed by N.J.S.A. 2A:14-2. Ibid. As the Senate Judiciary Committee indicated, "some [civil] actions permit retroactive application." Comm. Statement 1.

Section 9 of the bill, codified at N.J.S.A. 2A:14-2b, established a two-year filing window. That provision allowed certain victims whose claims for injuries arose from sexual abuse occurring prior to December 1, 2019, to commence an action so long as it was filed by December 1, 2021.

Section 4 of the bill amended the CSAA's definition of sexual abuse. First, it replaced the term "foster parent" with "family resource parent" in the list of individuals who may be held liable as passive abusers. Second, it

14

removed the requirement that passive abusers be "within the household" of the victim. The CSAA's definition for sexual abuse now reads as

> an act of sexual contact or sexual penetration between a child under the age of 18 years and an adult. A parent, resource family parent, guardian or other person standing in loco parentis who knowingly permits or acquiesces in sexual abuse by any other person also commits sexual abuse.
>
> [N.J.S.A. 2A:61B-1(a)(1).]

The removal of the "within the household" requirement permits "any individual person, or private or public entity, who takes custody and control of children even on a limited, temporary basis" to potentially be liable as a passive abuser. Comm. Statement 5. The Legislature specified that this amendment "[was] intended to only apply prospectively." Id. at 6.

The Legislature's fiscal estimate expected the CVA to "expose the State, school districts, and local units of government to civil claims that may result in . . . substantial settlements and judgments against affected governments." Legislative Fiscal Estimate to S. 477 1-2 (Mar. 29, 2019). School districts, in particular, may be more "exposed to the filing of additional tort claims . . . given the nature of their responsibilities." Id. at 3.

When the CVA was enacted into law on May 13, 2019, Governor Philip D. Murphy stated that the amendments were intended to provide "victims the ability to seek redress in court for sexual abuse that often leaves trauma lasting

15

a lifetime." See Governor's Statement on Signing S. Comm. Sub. for S. 477 (May 13, 2019).

## C.

Established principles guide the determination of whether the 2019 removal of the "within the household" requirement from the definition of sexual abuse in the CSAA should be applied retroactively to conduct that occurred prior to the CVA or prospectively to conduct occurring on or after the enactment of the CVA.

"With regard to whether legislative enactments should apply prospectively or retroactively, our courts have established a distinction between substance and procedure[.]" State ex rel. Edelweiss Fund, LLC v. JPMorgan Chase & Co., ___ N.J. ___, ___ (2026) (slip op. at 15).

Procedural statutes regulate the litigation process. Ibid.; see also State Bar Ass'n v. State, 387 N.J. Super. 24, 48 (App. Div. 2006). We generally apply procedural statutes "to all actions and proceedings -- those which have accrued or are pending, as well as those yet to be brought." Hoek v. Bd. of Educ. of Asbury Park, 75 N.J. Super. 182, 191 (App. Div. 1962). That is because the relevant date for a procedural statute is the invocation of the procedure, rather than the conduct giving rise to the claim. W.S., 252 N.J. at 522. Thus, even when procedural statutes are applied to matters that arise

16

from conduct that occurred prior to the statutes' enactment, their application is prospective, not retroactive. Edelweiss Fund, ___ N.J. at ___ (slip op. at 17); W.S., 252 N.J. at 522.

Substantive statutes, in contrast, affect "substantive rights," such as by creating "new causes of action, defenses, and damages." Maia, 257 N.J. at 352. Because substantive statutes impact vested rights, we generally look to the event giving rise to the claim and construe such statutes prospectively. In re Registrant J.D-F., 248 N.J. 11, 22 (2021); accord Edelweiss Fund, ___ N.J. at ___ (slip op. at 15) (holding that the prospective application of substantive statutes "ensures individuals have advance notice of the substantive liability rules that will attach to their underlying conduct" (citing Lombardo v. Revlon, Inc., 328 N.J. Super. 484, 489 (App. Div. 2000))); Maia, 257 N.J. at 349. However, this rule "is not to be applied mechanistically." Gibbons v. Gibbons, 86 N.J. 515, 522 (1981). To determine whether a substantive statute should be applied retroactively, we employ a two-part test. Maia, 257 N.J. at 349.

First, we must determine "whether the Legislature intended to give the statute retroactive application." James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 563 (2014) (quoting In re D.C., 146 N.J. 31, 50 (1996)). There are three situations that support a finding that the Legislature intended for a statute to apply retroactively: "(1) when the Legislature explicitly or implicitly

17

expresses an intent that a law be retroactive; (2) when an amendment is ameliorative or curative; or (3) when the parties' expectations warrant retroactive application." Maia, 257 N.J. at 350. The second part of the test is "whether retroactive application . . . [would] result in either an unconstitutional interference with vested rights or a manifest injustice." James, 216 N.J. at 563 (quoting In re D.C., 146 N.J. at 50).

IV.

To apply the foregoing principles to the legislation before us, we begin by noting that the removal of the "within the household" requirement from the CSAA is a substantive change, not a procedural one.

Two recent decisions illustrate the differences between procedural and substantive amendments. In W.S., this Court addressed whether a procedural amendment to the TCA applied to plaintiff's CSAA claim, which accrued in 2016, alleging that his sixth-grade teacher sexually abused him. 252 N.J. at 510-12. The amendment at issue, effective December 1, 2019, removed "a procedural requirement[] of the TCA" that required plaintiffs "to file a notice of claim with a public entity within ninety days after accrual of the cause of action." Id. at 522 (alteration in original) (internal quotations omitted). The Court explained that the plain language of the amended TCA provides that its "procedural requirements" no longer apply to "'action[s] at law for an injury

18

resulting' from sexual abuse." Id. at 513 (quoting N.J.S.A. 59:8-3(b)). Accordingly, "child sexual abuse survivors who file a CSAA complaint against a public entity after December 1, 2019 -- even if their cause of action accrued much earlier -- need not file a TCA notice of claim before filing suit." Id. at 511, 519. In so holding, we "applied the law in effect at the time" plaintiff filed his complaint. Id. at 521.

The following year, in Maia, this Court determined whether amendments to the Wage and Hour Law (WHL) and Wage Payment Law (WPL) applied to plaintiffs' allegations of violative conduct arising both before and after the amendments' effective date. 257 N.J. at 337, 344-45. Prior to the amendments, the WPL permitted aggrieved employees to recover only the full amount of wages improperly withheld by their employer, and the WHL authorized an award of attorney's fees. Id. at 344-45. The amendments, effective August 6, 2019, expanded the available relief to include liquidated damages under both statutes, and attorney's fees under the WPL. Id. at 345-46.

We observed that the determination of "whether a statute's application is retroactive . . . focus[es] on any changes to the legal consequences created by a statute or statutory amendment." Id. at 342. "By adding liquidated damages . . . to both the WPL and WHL, [and] attorneys' fees to the WPL," we concluded

19

that the amendments "impose[d] new legal consequences to events that occurred prior to [their] enactment." Id. at 347. We held that the amendments were "substantive." Id. at 352. The Legislature, however, did not express an intent for these amendments to apply retroactively, either in the statutory text or legislative history, nor did it characterize them as ameliorative or curative, and there was no evidence that the parties expected retroactive application. Id. at 351-52. Therefore, we held that the amendments were "to be applied prospectively to conduct that occurred on or after August 6, 2019 . . . not retroactively to conduct that occurred before the effective date." Id. at 351.

At oral argument, plaintiff asserted that the "within the household" amendment is procedural rather than substantive, contending that it merely removes a "barrier" to suit. Plaintiff relied on W.S. to argue that the removal of the "within the household" requirement must be treated similarly. However, the amendment at issue in W.S., which indeed eliminated a procedural "barrier" by removing the requirement that plaintiffs file notice within ninety days of their CSAA claim accruing, is distinguishable from the amendment before us.

The "within the household" amendment does not simply remove a procedural obstacle; rather, it imposes new legal burdens and expands substantive liability. Just as the amendments at issue in Maia impacted

20

"substantive rights" by adding "new causes of action, defenses, and damages to the WPL and WHL," 257 N.J. at 352, the "within the household" amendment alters "substantive rights" by creating new liability where none previously existed.

We therefore turn to the established two-part test for determining the retroactivity of substantive amendments.

V.

Applying that two-part retroactivity analysis, we hold that the removal of the CSAA's "within the household" requirement for passive abuser liability operates prospectively and applies only to instances of sexual abuse occurring on or after December 1, 2019.

A.

The first prong of the analysis requires the Court to ascertain "whether the Legislature intended to give the statute retroactive application." James, 216 N.J. at 563. In making that determination, we consider any explicit or implicit expression of such intent, the nature of the legislative enactment, and the reasonable expectations of the parties. Maia, 257 N.J. at 352.

1.

The Legislature may convey its intent that a statute operate retroactively by explicitly stating so "in the language of the statute or in the pertinent

legislative history." Id. at 350 (quoting Gibbons, 86 N.J. at 522). Both the text of the CVA amendments and the legislative statement accompanying the CVA -- which expressly states that the "within the household" amendment applies "only . . . prospectively," Comm. Statement 6 -- support a clear Legislative intent that the amendment be applied "only" in that manner.

We begin with the plain language of the statute. Here, N.J.S.A. 2A:14-2c provides that the amendments of the CVA "shall take effect on December 1, 2019." This phrase has consistently been interpreted to provide for prospective and not retroactive application of a statutory provision. See Maia, 257 N.J. at 352 ("[L]anguage stating that a provision is . . . 'effective immediately on a given date' . . . signal[s] prospective application . . . ."); see also Edelweiss Fund, ___ N.J. at ___ (slip op. at 16) ("[T]he commonly used phrase 'shall take effect immediately' has been interpreted to 'bespeak an intent contrary to, and not supportive of, retroactive application.'" (quoting Pisack v. B & C Towing, Inc., 240 N.J. 360, 371 (2020)); State v. Rosado, 475 N.J. Super. 266, 276 (App. Div. 2023) ("Our Supreme Court has consistently held that an amendment that is to take effect immediately is to be applied only prospectively."). We see no reason -- and plaintiff offers no support -- to depart from this consistent line of precedent.

Moreover, in construing a statute, we read each provision in tandem with the others, so as "to provide a harmonious whole." Bedford v. Riello, 195 N.J. 210, 224 (2008). The Legislature's amendments to related statutes within the CVA, which, unlike the amendment at issue here, expressly call for retroactive application, further evince the Legislature's intent that the elimination of the "within the household" requirement operates only prospectively.

For example, the CVA's amendments to the CIA "appl[ies] to all civil actions for an injury resulting from an act that occurred prior to the effective date of L. 2019, c. 120 ([N.J.S.A.] 2A:14-2a et al.)." N.J.S.A. 2A:53A-7.5(b) (emphasis added). Similarly, the CVA's extension of the statute of limitations applies to "[e]very action at law for an injury resulting from the commission of sexual assault . . . that occurred prior to, on or after the effective date of L. 2019, c. 120 ([N.J.S.A.] 2A:14-2a et al.)." N.J.S.A. 2A:14-2a(a)(1) (emphasis added). And, the CVA's initiation of a two-year filing window for previously time-barred claims likewise applies to "action[s] at law for an injury resulting from the commission of sexual assault . . . that occurred prior to the effective date of L. 2019, c. 120 ([N.J.S.A.] 2A:14-2a et al.)." N.J.S.A. 2A:14-2b(a) (emphasis added). The Legislature's distinct use of the phrase "prior to" in these provisions indicates legislative intent to provide for retroactive application.

23

On the other hand, the Legislature does not use such "prior to" language in reference to the removal of the "within the household" requirement, leaving only the general instruction that the CVA amendments "shall take effect on December 1, 2019"; this is a clear indication of contrary legislative intent. See In re Plan for Abolition of Council on Affordable Hous., 214 N.J. 444, 470 (2013) ("When 'the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded.'" (quoting Higgins v. Pascack Valley Hosp., 158 N.J. 404, 419 (1999))).

The corresponding legislative history, as articulated in the Senate Judiciary Committee's Statement, unequivocally confirms what the plain language reveals: the Legislature's intent that the "within the household" amendment applies "only . . . prospectively." Comm. Statement 6.

Section 4 of the Committee Statement, which specifically discusses the "within the household" amendment, is direct and explicit:

> [A] cause of action under this section based on the expanded liability against a "passive" abuser, removing the "household" setting as a requirement for liability, is not listed in section 2 or section 9 concerning the retroactive application of certain newly created forms of liability to lawsuits brought under the new, extended statute of limitations or, as further detailed below, during a two-year filing window available for otherwise time-barred claims . . . and is intended to only apply prospectively.
>
> [Id. at 5-6 (emphasis added).]

24

In Doe ex rel. Doe v. Small, the United States District Court for the District of New Jersey relied upon the Committee Statement to reach the same conclusion we reach on the issue we address here:  whether the elimination of the "within the household" requirement applied to plaintiff's CSAA claim for sexual abuse against a substitute teacher for conduct alleged to have occurred from early 2016 to April 2019.  654 F.Supp.3d 376, 383-84 (D.N.J. 2023).  The plaintiff in Small "concede[d] that the ["within the household"] [a]mendment is not retroactive but argue[d] that the Court should treat the amendment as retroactive for policy reasons."  Id. at 402.  Applying the two-part test for retroactivity described by Maia, and quoting the above Committee Statement, the District Court concluded "that the removal of 'in the household' from the CSAA is 'intended to only apply prospectively.'"  Ibid. (quoting Comm. Statement 6).  Because the effective date of the amendment was December 1, 2019, and "the alleged misconduct occurred before the 2019 effective date, the Court . . . appl[ied] the pre-amendment version of the CSAA to Plaintiff's CSAA claim against [defendants]."  Ibid.  We agree with the District of New Jersey, which found that the Committee Statement's express reference to the prospective application of the "within the household" amendment "shows conclusively that the Legislature intended for the ['within the household'] amendment to apply prospectively only."  Ibid.

25

Our holding is also consistent with the Legislature's statement that only "<u>some</u> actions permit retroactive application of standards of liability to past acts of abuse for which liability did not previously exist." <u>Comm. Statement</u> 1 (emphasis added). The Legislature's intent, again, is clear -- "some actions" apply retroactively and "some" do not. And, when determining whether a statute should be given retroactive or prospective effect, each provision must be evaluated independently. <u>See</u> <u>Landgraf v. USI Film Prods.</u>, 511 U.S. 244, 280 (1994) ("[T]here is no special reason to think that all the diverse provisions of the Act must be treated uniformly for . . . purposes" of determining whether a provision "should govern cases arising before its enactment.").

The Committee Statement elaborates upon this distinction. Section 2 of the Statement addresses the extended statute of limitations and makes clear that the amendment is "<u>retroactive</u> to cover past acts of abuse." <u>Comm. Statement</u> 2 (emphasis added). And section 9 repeats the same intent with regard to the two-year filing window: "The same retroactive application of the amended [CIA] . . . would also apply to . . . suits filed during the two-year window established by this section." <u>Id.</u> at 7-8. On the other hand, the Committee made its express intent crystal clear regarding section 4: The

26

"within the household" amendment "is intended to only apply prospectively." Id. at 6.

2.

Having established that neither the statutory text nor the legislative history indicates an intent for the "within the household" amendment to apply retroactively, we next consider the nature of the amendment itself. The Legislature may signal an intent for a statute to apply retroactively when it is "ameliorative" or "curative" in nature, that is "when 'its purpose is "to remedy a perceived imperfection in or misapplication of a statute and not to alter the intended scope or purposes of the original act."''" Maia, 257 N.J. at 351 (quoting Johnson, 226 N.J. at 388). Plaintiff does not raise this argument or address this part of the test.

The "within the household" amendment provides for a new and expanded scope of liability under the CSAA, especially as applied to public schools. Because this amendment alters the substantive scope of the CSAA, rather than cures a "perceived imperfection" or "misapplication" of the statute, it is neither ameliorative nor curative. Ibid.

3.

Finally, we turn to the last consideration for determining the retroactivity of statutes: the parties' expectations. Only "if there is no 'clear

27

expression of legislative intent' concerning retroactivity" will the court "'look at the controlling law at the relevant time and consider the parties' reasonable expectations as to the law,' which may warrant retroactive application." Ibid. (quoting Johnson, 226 N.J. at 388-89). "The expectation of retroactive application should be strongly apparent to the parties in order to override the lack of any explicit or implicit expression of intent for retroactive application." James, 216 N.J. at 573.

Here, the removal of the "within the household" requirement for passive abuser liability was in effect when plaintiff filed his claim on November 29, 2021. Even absent the clear statutory language and express legislative intent, retroactive application of this amendment could not have been strongly apparent to the parties, as such application would contravene the well-established presumption that statutory amendments apply prospectively. Gibbons, 86 N.J. at 521 ("The courts of this State have long followed a general rule of statutory construction that favors prospective application of statutes."); see also Strasenburgh v. Straubmuller, 146 N.J. 527, 543 (1996) ("It is 'presumed that provisions added by [an] amendment affecting substantive rights are intended to operate prospectively.'" (quoting Schiavo v. John F. Kennedy Hosp., 258 N.J. Super. 380, 385 (App. Div. 1992))).

28

Any contrary expectations held by plaintiff could only be based upon an errant interpretation of the legislative history. Plaintiff cites the Governor's Signing Statement, which anticipated an increased ability for "victims of sexual abuse to pursue justice through the court system." See Governor's Statement on Signing S. Comm. Sub. for S. 477. Plaintiff also cites the Legislature's fiscal estimate, which similarly projected that schools would be "exposed to the filing of additional tort claims" -- to assert that the parties expected that the "within the household" amendment would apply to all actions filed on or after its effective date. See Legislative Fiscal Estimate to S. 477 3.

These predictions regarding an increase in litigation, however, were not made only with reference to the impact of the "within the household" amendment. Rather, they were general statements referring to the anticipated impact of the legislation as a whole, including those amendments that were expressly retroactive in nature. Plaintiff, at oral argument, acknowledged that he raised common law claims pursuant to the CVA. Those types of common law claims, together with claims brought under the TCA and CSAA for alleged sexual abuse occurring prior to December 1, 2019 against entities "within the household," as well as for alleged sexual abuse arising on or after December 1, 2019, both "within" and outside of the "household," account for the potentially

29

significant expansion of litigation.  The general statements relied upon by plaintiff bear little, if any, significance to the retroactive application of one singular provision of the CVA.

## B.

Having examined the relevant statutory text and legislative history, the nature of the "within the household" amendment, and the parties' expectations, we find no support for its retroactive application.  Therefore, we need not reach the second part of the retroactivity test -- whether retroactive application would "result in either an unconstitutional interference with vested rights or a manifest injustice."  James, 216 N.J. at 563 (quoting In re D.C., 146 N.J. at 50).[4]

## VI.

Our courts operate under the presumption that substantive statutory amendments apply prospectively.  Strasenburgh, 146 N.J. at 543.  This case --

---

[4]  In James, this Court applied the two-part test for retroactive application to determine whether such application was appropriate for a new statute.  216 N.J. at 556.  We determined that the first part of the test was not satisfied and therefore we did not reach the second part of the test.  See id. at 565.  Here, we likewise need not reach any aspect of the second part of the test for retroactive application because we conclude that the first part of the test is not satisfied.  Before determining whether retroactive application would result in "manifest injustice," ibid., "we would need to address an open question about the manifest injustice standard left unresolved," Maia, 257 N.J. at 349 n.4 (citing Oberhand v. Dir., Div. of Tax'n, 193 N.J. 558, 572 (2008)).

30

where the Legislature is abundantly clear that the "within the household" amendment should be afforded prospective application only -- does not warrant a departure from this well-settled presumption. We thus hold that the removal of the "within the household" requirement from the Child Sexual Abuse Act applies only prospectively to acts of sexual abuse occurring on or after December 1, 2019.

Accordingly, we reverse the judgment of the Appellate Division.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE HOFFMAN's opinion.